UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRITTANY ANDERSON, as Administrator of
the Estate of WILLIAM B. ANDERSON,
deceased,

    Plaintiff,

v.                                      CAUSE NO. 3:23-CV-211 DRL-MGG

ST. JOSEPH COUNTY *et al.*,

    Defendants.

## OPINION AND ORDER

On April 6, 2021, William B. Anderson was arrested and taken to the St. Joseph County Jail. He tragically died five days later. His Estate sued numerous defendants under 42 U.S.C. § 1983 for failure to provide adequate medical care (against all defendants), municipal liability (against St. Joseph County and the supervisory jail defendants), and liability for failure to train and supervise (against the supervisory jail defendants). A doctor (C.H.) and nurse (April Bryce) move to dismiss under Federal Rule of Civil Procedure 12(b)(6). The court grants the motion in part.

## BACKGROUND

The court assumes the facts in the Estate's complaint as true for purposes of this motion. On April 6, 2021, Mr. Anderson was arrested by the Indiana State Police on charges of possessing heroin, cocaine, hypodermic syringes or needles, and drug paraphernalia. He was taken to the St. Joseph County Jail where he disclosed his history of drug abuse and told the arresting officer that he "knew it would be a long weekend and feared the withdraws."

At the time of processing, Mr. Anderson was five feet six inches tall and weighed approximately 120 pounds. He "was visibly malnourished and clearly not able to physically withstand detoxing without medical monitoring and intervention." Jail interviewer Kylie Williams completed a

medical observation questionnaire and indicated that Mr. Anderson had dizzy spells, blackouts, an addiction to heroin and pills, visible signs of alcohol or drug withdrawal, and that he had previously been in a drug treatment program.

April Bryce, a licensed practical nurse, worked at the St. Joseph County Jail. C.H., a physician licensed to practice medicine in Indiana, was the jail's medical director. On April 6, Nurse Bryce made an inmate movement request for Mr. Anderson to be moved at the soonest possible convenience for medical observation. He was placed in G104 Suicide Watch at 10:33 a.m. Another nurse later noted his movement again at 10:55 a.m. (though the complaint never says where).

At 12:20 p.m., attempts were made to learn if Mr. Anderson was a methadone patient, but unsuccessfully. Nurse Bryce (and another nurse) wrote a prescription for Tylenol, Motrin, and Imodium; and, though not a medical doctor, she also wrote a prescription for Phenergan—a phenothiazine and antihistamine that helps to prevent and control nausea and vomiting. No physician authorized this prescription at the time. Dr. C.H. signed the prescription two days later, on April 8, 2021. According to the complaint, no evidence shows that Dr. C.H. ever examined Mr. Anderson before his death or that anyone informed him of Mr. Anderson's condition.

At 4:30 p.m. on April 6, dinner was served, but Mr. Anderson refused to take his tray. That evening, he threw up several times, causing staff to clean and mop his cell several times. At approximately 8:30 p.m., he complained of not feeling well. His vitals were taken by a different nurse (Kassandra Zwierzynski). At 9:21 p.m., a jail employee (Rosie Staatz) noted that Mr. Anderson was "detoxing and throwing up," that he refused an antinausea and vomiting shot, and that he "just wants to go to the hospital."

The next morning, at approximately 8:30 a.m., Nurse Bryce noted that Mr. Anderson vomited and refused an antinausea shot.[1] His continued vomiting was not noted by jail staff, though at 8:39 a.m. staff observed that Mr. Anderson was moving and breathing. According to the complaint, staff failed to conduct visual checks every fifteen minutes this day as required by jail policy.

On April 8, as alleged, staff again failed to conduct the required visual checks every fifteen minutes. At approximately 5:00 a.m., a different nurse (Gerardo Diaz) found clear emesis (vomit) on Mr. Anderson's cell floor, so he was moved to another cell. At approximately 10:27 a.m., Mr. Anderson was "found unresponsive, pale, pulseless, apneic, and prone on his bench, with a pool of apparent urine beneath the bed." Another nurse (Megan O'Malley) arrived and advised staff to begin chest compressions. Nurse Diaz arrived and hooked Mr. Anderson to an automatic external defibrillator. A jail employee (William Limon) made cardiopulmonary resuscitation attempts until the nurses took over. The South Bend Fire Department arrived at 10:34 a.m. and took over Mr. Anderson's care. SBFD noted that Mr. Anderson appeared to be in poor health, was severely malnourished, and was pale with bruising in multiple stages of healing all over his body.

At 11:12 a.m., Mr. Anderson was transported by ambulance to Memorial Hospital. Upon arrival, he was pulseless, so CPR was initiated. He was intubated, sedated, and admitted to the intensive care unit. Dr. Luke White performed an examination and noted profound dehydration, lactic acidosis, and electrolytic derangement. He characterized Mr. Anderson's prognosis as extremely guarded given his multiple cardiac arrests and profound anorexia. A nutritionist noted that Mr. Anderson's admitting weight was 89 pounds and that he met the criteria for severe malnutrition.

---

[1] The Estate elaborates on the complaint's allegations to specify that Nurse Bryce was the one who made this clinical note. Though a pleading "may not be amended by the briefs in opposition to a motion to dismiss," *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012), the court may consider facts in a brief opposing dismissal so long as they are "consistent with the pleadings," *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013) (citation omitted); *accord Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017) ("elaborations" in briefing may be considered if consistent); *Jones v. Sparta Cmty. Hosp.*, 716 Fed. Appx. 547, 547 (7th Cir. 2018) (same). This is one such permissible elaboration.

Two days later on April 10, Mr. Anderson received hemodialysis due to acidosis, hyperkalemia, and anuria, but he remained anuric (when kidneys aren't producing enough urine). On April 11, life support measures were removed following confirmation of brain death by CT scan. A postmortem examination concluded that Mr. Anderson's cause of death was complications of drug withdrawal, including dehydration.

## STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It need not plead "detailed factual allegations." *Id.* A claim must be plausible, not probable. *Indep. Tr. Corp. v. Steward Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quotations and citation omitted).

## DISCUSSION

The Estate alleges violations of Mr. Anderson's constitutional rights under 42 U.S.C. § 1983. Section 1983 serves as a procedural vehicle for lawsuits "vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To establish a § 1983 claim, the Estate must show that Mr. Anderson was "deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006).

The Estate may bring a § 1983 claim only against those individuals "personally responsible for the constitutional deprivation." *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 614 (7th Cir. 2002).

The Fourteenth Amendment to the Constitution (rather than the Eighth Amendment) governs Mr. Anderson's deprivation of medical care claim given he was a pretrial detainee. *See Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). The court applies an "objective unreasonableness" standard instead of a "deliberate indifference" standard. *Id.* A pretrial detainee like Mr. Anderson cannot be punished at all, which the Eight Amendment allows for prisoners, much less can he be punished "maliciously and sadistically." *Id.* (citation omitted).

The objective unreasonableness inquiry involves two steps. *See McCann v. Ogle Cnty., Ill.*, 909 F.3d 881, 886 (7th Cir. 2018). The first step "asks whether the medical defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [plaintiff's] case." *Id.* (citation omitted). Negligence or even gross negligence won't suffice. *Id.* The second step asks whether the challenged conduct was objectively reasonable. *Id.* This step requires the court "to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *Id.*

    A.  *Dr. C.H.*

Dr. C.H. argues that the complaint alleges that he was not personally involved and that he was not personally informed about Mr. Anderson's condition or health status, or the care or treatment he was receiving or not receiving at the jail. The Estate responds that the complaint alleges that Dr. C.H. signed the prescription for Phenergan on April 8, and Indiana law requires that a physician examine and diagnose a patient before prescribing a controlled substance, so a fair inference is that the doctor personally examined Mr. Anderson.

5

But this isn't what the complaint says. The complaint alleges that there is "no evidence that [Dr. C.H.] was ever informed of [Mr. Anderson's] medical condition and, if so, that he ever examined [him] at any time before his death." The complaint alleges that the doctor did not sign the Phenergan prescription until April 8, 2021, two days after Nurse Bryce wrote it. A plaintiff can plead a party out of court. *See Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *Jackson v. Marion Cnty.*, 66 F.3d 151, 153 (7th Cir. 1995).

Taking these allegations as true, the Estate has not plausibly alleged that Dr. C.H. was personally involved or that he acted purposefully, knowingly, or recklessly in addressing Mr. Anderson's care. *See McCann*, 909 F.3d at 886. The inference the Estate wants to make directly contradicts its pleading. *See Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006) ("plaintiff pleads himself out of court when it would be necessary to contradict the complaint [] to prevail on the merits"). Discovery may alter this understanding, but that is one reason why Rule 15 exists. The court dismisses the case against Dr. C.H.

B. *Nurse Bryce.*

Nurse Bryce also moves to dismiss the deprivation of medical care claim against her. She says the complaint alleges facts that demonstrate that her conduct wasn't objectively unreasonable. The Estate disagrees and argues that the complaint shows Nurse Bryce ignored an obvious medical condition that was quickly spiraling to catastrophe and that her actions as pleaded were not objectively reasonable.

Taking all facts as true, the Estate has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. As alleged, Nurse Bryce knew Mr. Anderson was malnourished, throwing up, and refusing antinausea medication. She knew he could not withstand detox without medical monitoring and intervention. Although she requested that he be moved at the soonest possible convenience for medical

6

observation, the complaint leaves as a fair inference that she had not followed up to ensure this occurred. She attempted to find out if he was a methadone patient but did not persist after one attempt. She exceeded the scope of her authority and wrote a prescription for a drug that required a doctor's signature, still without knowledge whether he was a methadone patient or guidance from a licensed physician. *See McIntosh v. Wexford Health Sources, Inc.*, 2023 U.S. Dist. LEXIS 107581, 12 (S.D. Ill. June 21, 2023) ("It would be easy for a jury to find that Nurse Keen was not objectively reasonable in the circumstances when she dispensed unauthorized medication to [a pretrial detainee]."). And, on April 7, 2021, she (and the other defendants) failed to conduct visual checks every fifteen minutes as required by jail policy. On this pleading, these checks were plausibly critical. Discovery may show the facts to be different than as presented in this pleading; but, as alleged, the Estate's complaint states a claim against Nurse Bryce.

  C. *Leave to Amend Complaint.*

The Estate requests leave to amend its complaint under Rule 15. "Leave to amend is to be 'freely given when justice so requires.'" *Liu v. T&H Mach.*, 191 F.3d 790, 794 (7th Cir. 1999) (quoting *Payne v. Churchich*, 161 F.3d 1030, 1036 (7th Cir. 1998) and Fed. P. Civ. P. 15(a)). "Unless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519-20 (7th Cir. 2015). Neither defendant opposes an amendment or offers a reason why an amendment would be futile, prejudicial, or otherwise unwarranted. The court today cannot say an amendment would be futile or otherwise unwarranted, so allows leave for the Estate to amend.

CONCLUSION

Accordingly, the court GRANTS IN PART AND DENIES IN PART the motion to dismiss under Rule 12(b)(6), dismissing Dr. C.H. only [ECF 41]. The court GRANTS the Estate leave to amend its complaint on or before September 12, 2023.

Additionally, the court STRIKES the Estate's response to defendant's motion to dismiss [ECF 45]—its paragraph-by-paragraph answer-type response, not its brief—as unnecessary and noncompliant with this district's local rules and CAUTIONS the Estate to review and follow all rules governing briefing.

SO ORDERED.

August 28, 2023                                             *s/ Damon R. Leichty*
                                                            Judge, United States District Court